Hans Pauly v. Commissioner. Erna Pauly v. Commissioner.
Pauly v. Commissioner
Docket Nos. 24732, 24733.
United States Tax Court
1950 Tax Ct. Memo LEXIS 79; 9 T.C.M. (CCH) 902; T.C.M. (RIA) 50247; October 13, 1950
*79 Petitioner Hans Pauly and his father held to be bona fide partners, each possessing a one-half interest in a wholesale meat business and the profits realized therefrom during the taxable years in issue. Aaron Goldfarb, Esq., City Nat. Bank Bldg., Houston, Tex., and Edwin L. Bruhl, C.P.A., for the petitioners. D. Louis Bergerson, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion These proceedings, consolidated for trial and opinion, involve deficiencies in individual income tax for the calendar years 1943 to 1946, inclusive, in the following amounts: Hans Pauly
Erna Pauly
Docket No.
Docket No.
24732
24733
1943
$ 2,138.46
$ 2,551.62
1944
2,064.09
2,017.71
1945
8,383.88
8,461.34
1/1/46 to
7/31/46
23,793.65
23,855.40
Totals
$36,380.08
$36,886.07
The principal issue herein is whether the petitioner, Hans Pauly, and his father, Josef Pauly, were bona fide partners in the operation of a wholesale meat business during the years 1942, 1943, 1944, 1945 and the taxable period January 1 to July 31, 1946. Other issues raised in the petition relate to the deductibility of the sum of $1,800 as entertainment *80 expense in the year 1942, * and the sum of $967 as ordinary and necessary business expense in 1945, both of which amounts were claimed as deductible business expenditures in the partnership returns filed for such years. Finding of Fact Petitioners, Hans and Erna Pauly, are husband and wife, residing in Houston, Texas. Petitioners filed separate income tax returns for the taxable years 1942 to 1946, inclusive, with the collector of internal revenue for the first collection district of Texas. The tax liability of Erna Pauly is involved herein solely by reason of the community property laws of the State of Texas. Josef and Sophie Pauly, the parents of Hans Pauly, are residents of Houston and in each of the taxable years 1942 to 1946, inclusive, filed separate income tax returns with the collector of internal revenue for the first collection district of Texas. During 1931 and for many years prior thereto, Josef Pauly was the proprietor of a wholesale and retail meat business in Dormstadt, Germany. In 1931, Josef persuaded Hans, his *81 only child, who was approximately 20 years of age and working at that time as a rug and curtain salesman in another German city, to return to Dormstadt and become a partner in the meat business. From 1931 to 1935, Josef and Hans operated the business as a partnership, Hans being in charge of sales and Josef supervising the purchasing and butchering of livestock. Hans and Erna were married in 1935 and following their marriage Josef retired and turned the business over to Hans. In 1936, Hans and Erna decided to leave Germany because of the Hitler regime and turned the business back to Josef. Hans and Erna migrated to the United States and arrived in San Antonio, Texas, in November, 1936. Josef and Sophie remained in Germany and leased out the business. In San Antonio Hans worked as a butcher for various packing plants and for a period of eight or nine months operated a retail grocery store. In March, 1939, Hans and Erna moved to Houston. Josef and Sophie left Germany in 1939 and came directly to the home of Hans and Erna in Houston. At that time, Hans was employed on a part-time basis in the meat department of a Houston chain store. Shortly after the arrival of Josef, he and *82 Hans decided to re-enter the meat business. Hans contacted the Port City Packing Company which was then operating as an abattoir, and arranged for the use of that company's telephones, coolers and other facilities, so that the business could be operated directly from the packing plant. At the inception of the business, Hans contributed capital in the amount of $500 which he borrowed from a Houston bank on the strength of a note endorsed by a friend, and Josef contributed approximately $450 from cash and property he had managed to bring from Germany. At the time Hans and Josef entered into business in 1939, there was an unwritten agreement or understanding, and it was their intention, that they would operate the business as partners and share equally in all profits and losses. Thereafter, until some time in 1941, the business was operated from the Port City Packing Company offices, Josef purchasing livestock and supervising their slaughter and Hans handling sales, business finances and deliveries. From 1941 until 1945, the business, which was now known as the Pauly Packing Company, was operated from a store at 27 North Louisiana Street, Houston, which contained a sales cooler *83 and office facilities. Some time in 1945, the business was moved to a new packing plant constructed by the partnership at 4767 Calhoun Road, Houston. On July 31, 1946, two Texas corporations, the Pauly Packing Company, Inc., and the Pauly Abattoir & Rendering Company, Inc., were organized to take over the assets and business of the Pauly Packing Company. Throughout the period from 1939 to July 31, 1946, Hans was primarily engaged in managing the office affairs, the sales activities and the finances of the business. Either Hans or Erna, who worked in the office from time to time, signed all checks. Josef did practically all of the livestock buying and supervised slaughtering. Although Josef's knowledge of the English language was very limited, he had no difficulty in making himself understood in the market and was regarded in the trade as an outstanding livestock buyer. Partnership returns were filed by the Pauly Packing Company for each of the years 1941, 1942, 1943, 1944 and 1945 and the period January 1 through July 31, 1946. On such returns, the business was described either as a joint venture between father and son, or as a partnership in which Hans and Josef owned equal interests. *84 Employer's tax returns were filed quarterly in 1941 and for the first three quarters of 1942, which described the business as "Hans Pauly, Hans Pauly Meat Co." and were signed "Hans Pauly, Owner". The final quarterly return for 1942 and those for subsequent years were signed "Hans Pauly, partner". Various other returns, reports and applications submitted by the partnership to Federal, State and private agencies during 1944, 1945 and 1946 were signed "Hans Pauly, partner". The net income of the Pauly Packing Company, as disclosed by the partnership returns filed for the years 1941 to 1945, inclusive, and the period January 1 to July 31, 1946, was as follows: 1941
$ 10,830.71
1942
28,728.66
1943
19,581.58
1944
29,524.96
1945
63,456.75
7 months 1946
143,591.33
The partnership return for each year disclosed an equal division of profits between Hans and Josef. No salaries were paid to Hans or Josef by the partnership. Both Hans and Josef, with the knowledge and consent of the other, withdrew whatever sums of money were needed from the business, such withdrawals being charged to their drawing accounts maintained on the partnership books. These accounts *85 for the period January 1, 1942 through July 31, 1946, disclose total withdrawals in the following amounts: Hans
Josef
1942
$ 6,834.21
$ 3,485.50
1943
17,420.63
4,527.12
1944
15,676.98
5,633.18
1945
16,431.41
7,436.67
7 months 1946
22,981.01
5,285.00
Total
$79,344.24
$26,367.47
From 1939 until the end of 1942, Hans, Erna, Josef and Sophie all lived in the same household and their joint living expenses were paid out of the earnings of the business. The partnership books prior to July 31, 1946, did not carry separate investment accounts for Hans and Josef, but for credit purposes carried a figure representing their combined net worth in the business. Separate investment accounts were set up for the first time when it was decided to incorporate the business on or about July 31, 1946. An audit of the partnership books as of July 31, 1946, by an independent certified public accountant disclosed a net worth of $213,344, of which sum $93,485.54 was allocated to the investment account of Hans, and $119,858.46 to the investment account of Josef. Upon the transfer of partnership assets to the Pauly Packing Company, Inc., and the Pauly Abattoir & Rendering *86 Company, Inc., the investment accounts of Hans and Josef were closed out in the following manner: Hans
Josef
Total
Investment 7/31/46
$ 93,485.54
$119,858.46
$213,344.00
Land transferred to Hans
20,000.00
20,000.00
Balance of investment
73,485.54
119,858.46
193,344.00
Trans. to Pauly Packing Co., Inc.
153,430.25
39,270.03
192,700.28
(79,944.71)
80,588.43
643.72
Trans. to Pauly Abattoir & Rendering Company,
Inc.
579.35
64.37
643.72
Balance Partnership Personal Accounts
(80,524.06)
80,524.06
0
It was understood by the parties that the overdraft of Hans in the amount of 80,524.06 would be settled later by private agreement. Credit for the assets transferred to the two new corporations was reflected on the corporate books as follows: Hans
Josef
Total
Personal Account Credit
$25,000.00
$25,000.00
$ 50,000.00
Balance of Net Assets 90% - 10%
128,430.25
14,270.03
142,700.28
Total Transfers to Pauly Packing, Inc.
153,430.25
39,270.03
192,700.28
Transfer to Pauly Abattoir
579.35
64.37
643.72
154,009.60
39,334.40
193,344.00
Land Transferred to Hans
20,000.00
20,000.00
$174,009.60
$39,334.40
$213,344.00
*87 The capital stock thereafter issued by the Pauly Packing Company, Inc., and the Pauly Abattoir & Rendering Company, Inc., was issued on the basis of 90 per cent to Hans and Erna and 10 per cent to Josef. Petitioner Hans Pauly and Josef Pauly were bona fide partners and each owned an undivided one-half interest in the Pauly Packing Company during the period January 1, 1942, through July 31, 1946. In 1942, the partnership incurred ordinary and necessary business expense in connection with the entertainment of customers in the amount of $900. Opinion ARUNDELL, Judge: The answer to whether Hans and Josef throughout the taxable years in controversy genuinely intended to operate the Pauly Packing Company as partners may be found in the nature of their agreement, their conduct, their statements, the testimony of disinterested persons, their respective abilities and capital contributions, the actual control of income and the purposes for which it was used, and any other facts throwing light on their true intent. . Hans and Josef testified that it was their intention and that they orally agreed to conduct the business as equal *88 partners from the time of its inception in 1939 until its dissolution and incorporation on July 31, 1946. They have produced such clear and convincing evidence in support of these declarations of intent that in our opinion no exhaustive review of the facts is necessary. It was apparently Josef who supplied the idea and the initiative which led to the establishment of the Pauly Packing Company. Hans had migrated to this country in November, 1936, and was working on a parttime basis in a chain grocery store when Josef arrived in 1939. Josef testified that it was he who suggested to Hans that there was a better future in the meat business and that they should investigate the market with that in mind. After arrangements had been made to use the facilities of the Port City Packing Company, Josef contributed all of the cash he had, which amounted to approximately $450, and Hans contributed $500, which he borrowed from a Houston bank on the strength of a note endorsed by a friend, to the capital of the business. Hans and Josef went into the market where, according to the testimony of disinterested witnesses, they represented themselves as partners and were so regarded by the trade. The *89 responsibilities of the business were divided between Hans and Josef according to the abilities of each. Josef, with a lifetime of experience in purchasing and slaughtering livestock, took charge of these activities for the partnership. Although he was handicapped at first by a lack of knowledge of the English language and American currency, he quickly acquired the reputation as an outstanding buyer and was highly respected by those with whom he dealt. Throughout the entire existence of the partnership, Josef devoted himself to these activities and was solely responsible for the purchasing and slaughtering of all livestock. Partnership returns were filed by Hans and Josef from 1941 through July 31, 1946, reflecting their equal ownership of the business. With but a few exceptions, all of the tax returns, reports, applications and other documents were executed in the name of the partnership and disclosed the equal interests of Hans and Josef therein. However, the respondent refuses to accept the facts set out above as establishing the validity and realty of the partnership. Respondent points out that no written partnership agreement was ever executed by Hans and Josef and that quarterly *90 Social Security returns were filed in 1941 and for the first three quarters of 1942 which were signed by Hans as "owner". In our opinion, these facts are of little or no importance. A written partnership agreement have never been regarded by the courts as necessary to or conclusive of the existence of a partnership. In respect to the Social Security returns filed by Hans and "owner", it is more significant that substantially all of the other returns, application, and reports which were submitted by the business to Federal, State, and private agencies disclosed the existence of the partnership. Respondent also argues that the disproportionate withdrawals of Hans, his control over finances, sales activities and office affairs, the absence of any division of the investment account until the dissolution of the partnership in July, 1946, and the issuance of stock in the two succeeding corporations to Hans and Josef on a 90 percent - 10 percent basis, respectively, is evidence that the business was in fact a sole proprietorship owned and controlled by Hans. We do not agree. The record shows that Josef and Sophie lived with Hans and Erna from 1939 until late in 1942, during which period *91 all of their joint household expenses were paid out of the business earnings. It appears that Josef regularly withdrew sums of money from the business commensurate with his needs. The fact that Josef's withdrawals were much less than those of Hans can be traced to the fact that his needs were modest and that he was over 60 years of age and had only himself and his wife to support. There is nothing in the record to justify the respondent's inference that Josef could not have withdrawn all of his distributive share of the partnership profits at any time. Therefore, we find no good reason for not accepting Josef's testimony that he was aware of and approved of Hans' withdrawals and, in the absence of any need for money on his own part, preferred to have his share of the profits remain in the business. It is true that Hans determined and directed the sales, financial and office policies of the business but this was a natural consequence of his particular experience and ability. Hans had been in charge of sales for their previous business in Germany and he was acquainted with the language, the financial and sales practices of this country, whereas Josef was unacquainted with such things *92 and possessed a particular ability in purchasing and slaughtering. Moreover, we are convinced that Josef occupied an important role in the over-all management of the business and there can be no question but that his skill and experience in matters entrusted to his control and discretion were every bit as vital to the ultimate success of the business as were the services of Hans. Nor do we see any real significance in the fact that no formal division of the investment account was made on the books until the dissolution of the partnership on July 31, 1946. This may have been an unusual bookkeeping practice but we fail to see where it indicates any greater ownership of the business by Hans than by Josef. The accountants who maintained and audited the partnership books from time to time testified that they were informed by Hans and Josef of their equal interests in the business. Under the circumstances of this case, we do not see what can be made of the fact that a final accounting of the withdrawals of the partners was postponed until dissolution. Incident to the dissolution of the partnership and the organization of the two new corporations, the investment account was arbitrarily *93 divided between Hans and Josef on a 90 per cent - 10 per cent basis, inasmuch as it was decided that those were the interests desired by each in the new corporations. This allocation of the assets to be transferred to the two corporations resulted in a credit owing to Josef upon the dissolution of the partnership in the amount of $80,524.06. Josef testified that he needed and wanted no more than a 10 per cent interest in the new corporations. Josef was advised by the accountant who closed the partnership books that the sum of $80,524.06 was owing to him from Hans. The fact that Josef demanded no note or other evidence of indebtedness from Hans for this amount, or the fact that it has not as yet been paid is of no concern to us in this proceeding. In our opinion, Hans and Josef entered into business in 1939 with the intention of operating the business as partners, sharing equally in any profits or losses, and that this was their intention until the partnership was dissolved on July 31, 1946. Therefore, we have found that Hans and Josef were bona fide partners, each possessing an undivided one-half interest in the Pauly Packing Company during the taxable years in issue. Two minor *94 issues remain. In the 1942 return, the partnership claimed a deduction in the amount of $1,800 for "Entertainment & Gifts". Hans testified that the business was sometimes required to entertain and to make gifts to customers and to make gifts to its employees on occasions such as Christmas. However, the amount claimed was conceded to be an estimate and no records are available to substantiate any part of that amount. Moreover, petitioners made no effort to explain the relative cost, type, or frequency of the gifts or entertainment accorded its customers and employees. We believe that some expense of this character is ordinarily and necessarily incurred by a business such as that engaged in by Hans and Josef. In the absence of any evidence of the exact amount actually expended for this purpose, we must make an approximation, bearing heavily upon the taxpayer whose inability to show the exact amount is of his own making. . Therefore, under the principle of the Cohan case, supra, we have determined that the partnership incurred and was entitled to a deduction in 1942 for ordinary and necessary business expense for entertainment and gifts *95 in the amount of $900. In the partnership return for 1945, there was included in deductible expense the sums of $500 expended in the acquisition of building permits, $109 for the purchase of three hand trucks, $230.50 for the purchase of sausage trays, and $127.50 for the purchase of liver racks. These items were disallowed as deductions by the respondent who capitalized the expenditures and allowed an additional deduction for depreciation. Petitioner conceded the non-deductibility of the $500 item on brief and clearly cannot prevail as to the remaining expenditures. The sum and substance of the testimony offered by Hans Pauly in support of the deductibility of the amounts expended in 1945 for liver racks, sausage trays and hand trucks was that these items do not have a long life, as liver racks deteriorate rapidly from blood, sausage trays are kicked around, and hand trucks are frequently lost. We note that Bulletin "F" estimates the average useful life of hand trucks as 15 years and we certainly must require more evidence than the general statements paraphrased above to conclude that the average useful life of liver racks, sausage trays, and hand trucks in the petitioner's business *96 is less than one year or that they should not be regarded as capital items in the wholesale meat business. Therefore, the respondent's treatment of the cost of such items purchased by the partnership in 1945 is sustained. Decision will be entered under Rule 50. Footnotes
*. This amount bears on the petitioners' 1943 income tax liability because of the forgiveness features of the Current Tax Payment Act of 1943.↩